IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| HARBOR PILOTS OF NY NJ, LLC, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Case No. SAG-20-2137 |
| | * | |
| BOUCHARD TRANSPORTATION | * | |
| COMPANY, INC., | * | IN ADMIRALTY |
| | * | |
| Defendant, and | * | |
| | * | |
| APEX OIL COMPANY, INC., | * | |
| | * | |
| Garnishee. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

On July 21, 2020, Plaintiff Harbor Pilots of NY NJ, LLC ("Harbor Pilots") filed a Verified Complaint with Request for Issue of Process of Maritime Attachment and Garnishment ("the Verified Complaint") against Defendant Bouchard Transportation Company, Inc. ("Bouchard"). ECF 1. The Verified Complaint names a single Garnishee, Apex Oil Company, Inc. ("Apex"). *Id.* Also on July 21, 2020, Harbor Pilots filed a Motion for Order Authorizing Issuance of Process of Maritime Attachment and Garnishment *ex parte*, ECF 4, and a Motion for Appointment for Service of Process of Maritime Attachment and Garnishment, ECF 5 (collectively, "the Motions"). No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). For the reasons stated below, Harbor Pilots's Motions will be denied without prejudice.

## I.     FACTUAL BACKGROUND

Harbor Pilots brings this *quasi in rem* action under the Court's admiralty jurisdiction pursuant to 28 U.S.C. § 1333 and Federal Rule of Civil Procedure 9(h). ECF 1, ¶ 1. Harbor

Pilots, a Delaware limited liability company, "provide[s] piloting services to vessels." *Id.* ¶ 5. Bouchard is a New York corporation that "owns and operates tugs and ocean-going petroleum barges." *Id.* ¶ 6.  Harbor Pilots's Verified Complaint seeks to recover damages stemming from several contracts, allegedly executed between June and November, 2019, that Bouchard, to date, has not paid on.  ECF 1, ¶¶ 8-12.  In total, Harbor Pilots seeks $17,697 in compensatory damages and "interest" from Bouchard.  *Id.*, Ad Damnum Clause ¶ (A).  Of particular relevance here, Count II of the Verified Complaint seeks an order of attachment and garnishment of "all of Bouchard's tangible or intangible property or any other funds held by any Garnishee, up to the amount of $17,697.00."  *Id.*, Ad Damnum Clause ¶ (B).  Specifically, Harbor Pilots alleges that Bouchard "is believed to have, or will have during the pendency of this action, property and/or assets in this jurisdiction consisting of cash, funds, freight, hire, and/or credits in the hands of Garnishee."  *Id.* ¶ 16.  Harbor Pilots bases this Court's personal jurisdiction over Bouchard upon the garnishment of Bouchard assets currently held by Apex in this District, because Bouchard "cannot be found in this District."  *Id.* ¶¶ 2-4.

## II.   LEGAL STANDARDS

Rules B and E of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions govern the attachment and garnishment of assets in maritime or admiralty actions:

> If a defendant is not found within the district when a verified complaint praying for attachment and the affidavit required by Rule B(1)(b) are filed, a verified complaint may contain a prayer for process to attach the defendant's tangible or intangible personal property—up to the amount sued for—in the hands of garnishees named in the process.

Fed. R. Civ. P. Supp. R. B(1)(a).  Rule E further provides that maritime attachment and garnishment "may be served only within the district."  *Id.* R. E(3)(a).  Collectively, then, Rules B

and E require admiralty plaintiffs in this Court to satisfy four criteria to obtain an order of attachment:  (1) the plaintiff has a prima facially valid admiralty claim against the defendant; (2) the defendant cannot be found within the District of Maryland; (3) the defendant's property may be found within the District of Maryland; and (4) there is no other statutory or maritime law bar to the attachment.  *See Blue Whale Corp. v. Grand China Shipping Dev. Co.*, 722 F.3d 488, 493 (2d Cir. 2013); *see also Vitol, S.A. v. Primrose Shipping Co.*, 708 F.3d 527, 541 (4th Cir. 2013).

If the Court orders attachment, then "any person claiming an interest in [the property] shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated."  Fed. R. Civ. P. Supp. R. E(4)(f).  These procedures allow a maritime plaintiff to assert a claim against a defendant "over whom the court does not (otherwise) have personal jurisdiction, by seizing property of the defendant (alleged to be in the hands of a third party)."  *DS-Rendite Fonds Nr. 108 VLCC Ashna GmbH & Co Tankschiff KG v. Essar Capital Ams., Inc.*, 882 F.3d 44, 47 (2d Cir. 2018); *accord Submersible Sys., Inc. v. Perforadora Cent., S.A. de C.V.*, 249 F.3d 413, 421 (5th Cir. 2001).  Any plaintiff seeking an initial *ex parte* order of attachment or garnishment bears the burden of establishing the right to attachment.  *DS-Rendite*, 882 F.3d at 48; *Icon Amazing, LLC v. Amazing Shipping, Ltd.*, 951 F. Supp. 2d 909, 915 (S.D. Tex. 2013) (citing *Aqua Stoli Shipping, Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434, 445 (2d Cir. 2006)).  Ultimately, the decision to grant or deny a motion for order of attachment rests in the trial court's discretion.  *See DS-Rendite*, 882 F.3d at 48, 51.

## III.    ANALYSIS

Supplemental Rule B(1)(b) provides that upon a request for attachment or garnishment, the Court must review the Verified Complaint and accompanying affidavit "and, if the conditions of this Rule B appear to exist," it must enter an order authorizing the attachment and

garnishment. Rule B does not, however, explicitly provide what level of specificity the Verified Complaint and accompanying affidavit's allegations must meet. While the Fourth Circuit, to this Court's knowledge, has not directly answered this question, *see Tango Marine S.A. v. Elephant Grp., Ltd.*, 431 F. Supp. 3d 726, 729 (E.D. Va. 2020), the Second Circuit recently addressed this issue in *DS-Rendite*.[1]

Generally, Rule B's pleading requirements "are said to be easily met." *DS-Rendite*, 882 F.3d at 49. Courts traditionally would only refuse to order attachment in two general instances: (1) in cases "where the attachment and garnishment is 'served before the garnishee comes into possession of the property'"; and (2) where the garnishee is not indebted to the defendant at the time garnishment is ordered. *Id.* (citations omitted). However, after surveying a number of recent attachment cases, the Second Circuit found that courts now require "a minimal specificity of factual allegations identifying the defendant's property to be attached before issuing Rule B attachments and holding Rule E hearings." *Id.* at 49-50. In other words, plaintiffs seeking attachment must satisfy the *Twombly-Iqbal* standard in identifying the property to be attached under Rule B – they must allege facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). Requiring these additional factual allegations allows the Court to ensure that maritime plaintiffs are not abusing the unique tools afforded to them to vindicate their claims. *See Maersk, Inc. v. Neewra, Inc.*, 443 F. Supp. 2d 519, 527 (S.D.N.Y. 2006) ("The ease

---

[1] Though not binding, case law from the Second Circuit is particularly persuasive on this issue, as this Court has often looked to the Second Circuit for guidance on questions of admiralty law. *See, e.g.*, *Evridiki Navigation, Inc. v. Sanko S.S. Co.*, 880 F. Supp. 2d 666 (D. Md. 2012) (relying exclusively on Second Circuit case law); *Woodlands, Ltd. v. Westwood Ins. Co.*, 965 F. Supp. 13 (D. Md. 1997) (relying almost exclusively on Second Circuit case law); *see also Emerald Equip. Leasing, Inc. v. Sea Star Line, LLC*, No. L-09-2808, 2009 WL 4061752, at *1 (D. Md. Nov. 20, 2009) (noting that the Second Circuit is "traditionally responsible for a large number of admiralty cases").

with which a prima facie case for attachment can be made . . . creates a real risk of abusive use of the maritime remedy."). Thus, to demonstrate entitlement to attachment of a garnishee's assets, the Second Circuit held that a plaintiff must plausibly allege that the garnishee possesses identifiable property of the defendant. *DS-Rendite*, 882 F.3d at 50. To make this showing, the plaintiff must provide sufficient factual allegations "either as to the nature of the business relationship between the garnishee(s) and the defendant and/or the nature of the defendant's property subject to the attachment." *Id.*

Applying this standard, the Second Circuit in *DS-Rendite* affirmed the trial court's denial of the plaintiff's motion for order of attachment, because the plaintiff's complaint merely alleged that "[e]ach of the Garnishees, on information and belief, holds property of [the defendants]," and that the funds the garnishees held were "due and owing to Defendants." *Id.* at 50-51. The Second Circuit found that the complaint's allegations were merely "conclusory," and insufficient to establish why any one of the six companies listed as garnishees would hold property of the defendants, or why the property would be within the forum court's district. *Id.* at 51.

Other courts considering similar complaints have reached similar conclusions. *See, e.g.*, *Tango Marine S.A.*, 431 F. Supp. 3d at 730-32 (finding the facts alleged in a verified complaint insufficient to show that the defendant had property within the district; while the plaintiff had alleged that the defendant and the garnishee were business partners, the plaintiff failed to explain the nature of the partnership, or "how being partners means that Garnishee holds property in which Defendant has an interest"); *Marco Polo Shipping Co. v. Supakit Prods. Co.*, 2009 A.M.C. 639, 639 (S.D.N.Y. 2009) (rejecting the notion that any potential for a defendant to transfer funds through the a bank in the forum court's district satisfies the Rule B attachment showing; instead, the plaintiff must allege "enough facts to render it plausible that the defendant's funds

5

will be present in the district at some future time"); *DBCN v. Enersur S.A.*, No. 09 Civ. 8359 (RJS), 2009 WL 3254447, at \*2 (S.D.N.Y Oct. 9, 2009) (finding that a plaintiff failed to establish a plausible entitlement to attachment based on the allegation that it was "anticipated and expected" that the defendants would have property in the forum court's district, without any further elaboration or support); *Wight Shipping, Ltd. v. Societe Anonyme Marocaine de L'Industrie Du Raffinage S.A.*, No. 08 Civ. 10169 (RJS), 2008 U.S. Dist. LEXIS 106420, at \*5-8 (S.D.N.Y. Nov. 24, 2008) (holding that a plaintiff failed to plausibly establish that an electronic funds transfer to defendant would be within the district based on "a speculative hope that Defendant's assets, in the form of EFTs, will fortuitously appear in one of the myriad banks Plaintiff has identified in the District").

Harbor Pilots's Motion for Order of Attachment and Garnishment meets a similar fate. To be sure, on the current record, Harbor Pilots has plausibly alleged that it has an admiralty claim against Bouchard, that Bouchard cannot be found in the District of Maryland, and that there are no other maritime or statutory law bars to its recovery.  However, even drawing all reasonable inferences in Harbor Pilots's favor, the Verified Complaint fails to plausibly allege that Bouchard has, or will have, debt or any other property located *within this District*.

Harbor Pilots has provided invoices showing that, as recently as December, 2019, Apex has incurred debts owed to Bouchard for services that Bouchard rendered to Apex.  ECF 1-1 (November and December, 2019 Invoices).  The Court is willing to accept, *arguendo*, that these invoices plausibly establish that Apex would be indebted to Bouchard at the time of the attachment's issuance.  The issue, however, is the *location* of Apex's debt.  Where a maritime plaintiff seeks to attach a debt held by a third-party garnishee, courts typically hold that the debt resides in the state(s) in which the third-party garnishee is subject to personal jurisdiction,

6

according to state law.  *See PSARA Energy, LTD v. SPACE Shipping, LTD*, 290 F. Supp. 3d 158, 163-64 (D. Conn. 2017); *China Nat'l Chartering Corp. v. Patcrans Air & Sea, Inc.*, 882 F. Supp. 2d 579, 603-04 (S.D.N.Y. 2012); *Day v. Temple Drilling Co.*, 613 F. Supp. 194, 196-97 (S.D. Miss. 1985); *Eng'g Equip. Co. v. S.S. Selene*, 476 F. Supp. 706, 708-09 (S.D.N.Y. 1978); *see also* 2 THOMAS J. SCHOENBAUM, ADMIRALTY & MARITIME LAW § 21:3 (6th ed. Nov. 2019 update) ("In the case of intangibles, the situs of a debt is generally the place of business or residence of the garnishee.").

Here, the Verified Complaint does not allege Apex's primary place of business.  ECF 1, ¶ 7.  The only evidence before the Court as to Apex's citizenship consists of Bouchard's invoices to Apex, which are directed to the attention of a Mr. Steve Wirkus, at an address located in St. Louis, Missouri.  *Id.*  Nonetheless, Harbor Pilots appears to argue that the fact that Apex has a resident agent located in Lutherville-Timonium, Maryland, means that the debt is located in Maryland.  ECF 4-1 at 3-5; *see* ECF 1, ¶ 7.  Courts in this District, however, have held that a company's registering to do business in Maryland, even coupled with its appointment of a registered agent in the State, is insufficient to establish general personal jurisdiction over that company.  *Gogel v. Maroulis*, No. GLR-16-2695, 2019 WL 5593280, at *5 (D. Md. Oct. 30, 2019); *Tyler v. Gaines Motor Lines, Inc.*, 245 F. Supp. 2d 730, 732 (D. Md. 2003).  Moreover, on the current record, the Court cannot find that Apex's possible possession of Bouchard debt, which has no apparent connection to Maryland, would plausibly satisfy the *International Shoe* standards for specific personal jurisdiction in this State.  *See Livingston v. Naylor*, 173 Md. App. 488, 520-21 (2007) (concluding that Maryland courts have no personal jurisdiction, pursuant to a judgment enrolled only in Maryland, to garnish wages earned by a Marriott employee, because the fact that Marriott is present in all 50 states "does not support the conclusion that every

employee's wages are present in all such locations"; Maryland courts may only garnish wages earned by the employee while working in Maryland); *Woodlands, Ltd.*, 965 F. Supp. at 14-15 (finding, under federal and Maryland state law, that a bank's having a branch location in Maryland is, alone, insufficient to justify the attachment of funds in an account held in a Virginia-based branch of that same bank). Accordingly, Harbor Pilots has failed to allege the presence of any Apex-held Bouchard debt within the District of Maryland. Without such an allegation, it would be improper to commence the attachment process in this District, thereby forcing the parties to litigate the matter in a jurisdiction with no apparent link to the property or debt at issue, or to any of the parties.

As to the other categories of property Harbor Pilots seeks to attach or garnish – "assets, cash, funds, credits, wire transfers, accounts, letters of credit, electronic fund transfers, freights, sub-freights, charter hire, sub-charter hire, or any other tangible and/or intangible assets" – it similarly has included no factual allegations that plausibly demonstrate that Apex holds any of these within the District of Maryland. *See DS-Rendite*, 882 F.3d at 50-51; *Tango Marine S.A.*, 431 F. Supp. 3d at 730-32; *Marco Polo*, 2009 A.M.C. at 639; *Wight Shipping, Ltd.*, 2008 U.S. Dist. LEXIS 106420, at *5-8. Without any of Bouchard's property plausibly residing in this District, this Court cannot, on the current record, issue any writ of maritime attachment and garnishment.

## IV.    CONCLUSION

For the reasons stated above, Harbor Pilots's Motion for Order Authorizing Issuance of Process of Maritime Attachment and Garnishment, ECF 4, and Motion for Appointment for Service of Process of Maritime Attachment and Garnishment, ECF 5, are DENIED WITHOUT PREJUDICE. If Harbor Pilots wishes to continue seeking attachment of Bouchard assets in this

District, it may seek leave to file an Amended Verified Complaint containing allegations establishing the existence of Bouchard assets in Maryland, and may then refile its Motions.

Dated:  July 22, 2020                                   _____/s/_____
                                                       Stephanie A. Gallagher
                                                       United States District Judge